IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARITA DOUGLAS<br>1508 Kingshill Road<br>Bowie, MD 20721<br><br>   Plaintiff,<br><br>  vs.<br><br>CHARIOTS FOR HIRE<br>1568 Spring Hill Road<br>McLean, VA 22102<br><br>and<br><br>M AND C ENTERPRISE, INC.<br>The International Trade Center<br>13164 Lazy Glen Lane<br>Oak Hill, VA 20171<br><br>and<br><br>MICHAEL P. FORTKORT, COURTNEY J.<br>WEST and JEFFREY T. DAUSCH<br>In their corporate and individual capacities<br>The International Trade Center<br>13164 Lazy Glen Lane<br>Oak Hill, VA 20171<br><br>   Defendants. | Civil File No.: |

**COMPLAINT**

  Plaintiff through undersigned attorney hereby files her *Complaint* against Defendants. This is an action seeking unpaid minimum wage and unpaid overtime wages, liquidated damages, attorneys' fees and costs and equitable relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, on behalf of Plaintiff against Defendants. The jurisdiction of this Court is also invoked to recover Plaintiff's unpaid wages under District of Columbia wage payment law, fraudulent misrepresentation and, breach of implied contract.

2434740.v1

## THE PARTIES

1. Plaintiff, Charita Douglas, presently resides in Bowie, Maryland. Plaintiff was employed by Defendants, within the meaning of 29 U.S.C. § 203 of the FLSA, as a driver.

2. Defendant, M and C Enterprise, Inc., d/b/a Chariots for Hire, Inc., is a corporation duly organized and existing under the laws of the Commonwealth of Virginia, and is authorized to do business and is doing substantial business within the District of Columbia, within the territorial jurisdiction of this Court. Specifically, Defendant is engaged in the business of providing chauffeured transportation services within the District of Columbia and the surrounding metropolitan area.

3. Defendant Michael P. Fortkort, an individual, is a co-owner and identified in the company's Articles of Incorporation as the President of M and C Enterprise, Inc. At all relevant times, Mr. Fortkort exercised operational control over the company, to include overall management responsibilities.

4. Defendant, Courtney J. West, an individual, is a co-owner and identified in the company's Articles of Incorporation as the Secretary of M and C Enterprise, Inc. At all relevant times, Mr. West exercised operational control over the company, to include management of its human resources department.

5. Defendant, Jeffrey T. Dausch, an individual, is a co-owner and identified in the company's Articles of Incorporation as the Treasurer of M and C Enterprise, Inc. At all relevant times, Mr. Dausch exercised operational control over the company, to include oversight of its payroll practices.

## JURISDICTION

3. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. §§ 1331, 1337 and pursuant to 29 U.S.C. §216(b).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

5. Venue is appropriate in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(a).

## GENERAL STATEMENT OF FACTS

6. Defendants operate a fleet of vehicles for the purpose of offering chauffeured ground transportation services to the general public in the Washington, D.C. metro area. These transportation services can be more appropriately described as luxury limousine services.

7. Plaintiff was hired by Defendants in June 2010 as a driver. On or about June 5, 2010, during Plaintiff's orientation meeting with Defendant's management (Chris Harris), Plaintiff and other new hires were told that they would be paid at a rate of $20/hr for full-time work. Several days later, during Plaintiff's first day on the job, she and other new hires (approximately 12 - 14 new drivers), were again informed by a different manager that their normal rate of pay would be $20/hr. Plaintiff and the other new hires were informed at that time that the only exception to the $20/hr rate would be that first day on the job, wherein each of them would be paid at a rate of $10 per hour, for washing vehicles and other administrative tasks.

8. Plaintiff was required to report to Defendant's worksite seven days a week. Plaintiff was generally instructed to report to work by 9am each morning.

9. During the course of the day, Plaintiff was assigned to drive Defendant's customers. Defendant's description of services informs that the company provides, "limousine services on a call-in or reservation basis for special events, proms, weddings, funerals, corporate events, etc."

10. Plaintiff was required to remain at Defendant's site (commonly referred to as "the yard"), until her last driving assignment was complete. After completion of her last assignment, Plaintiff was required to return Defendant's vehicle to the yard. Other drivers were similarly obligated.

11. Plaintiff was not paid the $20/hr promised to her when she accepted her position for all of her time spent on the job. Instead, Plaintiff was <u>only</u> compensated $20/hr for the hours that she actually drove Defendant's customers on her driving assignments. Plaintiff was not compensated for her time spent waiting to be engaged to work, such as waiting at the yard for an assignment to materialize. Plaintiff was also not paid for the time she spent driving to, or from, the pick up of a customer. Upon information and belief, this payment scheme also applied to other drivers employed by Defendants.

12. Additionally, on multiple occasions, Plaintiff was not paid for performing the driving assignments that she actually accomplished. Upon information and belief, this also applied to other drivers employed by Defendants.

13. As a result of Defendants' pay practice, Plaintiff worked in excess of 40 hours a week and was not paid federally required overtime wages. Upon information and belief, this also applied to other drivers employed by Defendants.

14. As a result of Defendants' pay practice, on certain workweeks, Plaintiff was not paid the federally required minimum wage. Upon information and belief, this also applied to other drivers employed by Defendants.

15. As a result of Defendants' policy, on certain workweeks, Plaintiff was not paid the minimum wage or overtime wages required under District of Columbia law. Upon information and belief, this also applied to other drivers employed by Defendants.

16. Upon information and belief, Defendants' policy has affected a wide class of drivers employed by Defendants since June 2008.

## SPECIFIC FACTS RELATED TO DEFENDANTS' VEHICLE FLEET AND FLSA OBLIGATIONS

17. At all relevant times, Defendants maintained a mixed fleet, consisting of vehicles weighing less than 10,000 gross pounds, and vehicles weighing 10,001 or more.

18. Defendants' mixed fleet also consisted of vehicles with seating capacities of 8 passengers or less, and vehicles with seating capacities of more than 8 passengers (including the driver).

19. During each workweek in question, Plaintiff performed services for Defendants by driving vehicles that met the criteria described above in paragraphs 18 and 19. Upon information and belief, a large class of other drivers employed by Defendants were similarly situated.

20. Congress passed the FLSA in 1938. The FLSA provides that subject to certain enumerated exemptions, employees who work in excess of 40 hours in a workweek are entitled to compensation at a rate of one-and-one-half times their regular rate of pay. See 29 U.S.C. § 207.

21. One enumerated exemption under the FLSA is called the "Motor Carrier Exemption," which exempts employees from overtime compensation "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours." See 29 U.S.C.A. § 213(b)(1). Under the Motor Carrier Act, the Secretary of Transportation has the power to regulate the qualifications and hours of employees of "motor carriers" and "private motor carriers" engaged in interstate commerce. See 49 U.S.C.A. §§ 301, 31501, 31502(b).

Prior to 2005, the term "motor carrier" was defined as a person providing motor vehicle transportation for compensation. As such, historically speaking, employees of motor carriers have not been entitled to overtime compensation because they were subject to the authority of the Secretary of Transportation.

22. In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users law ("SAFETEA: LU"). The purpose of the Act was to streamline the process for vehicle inspection at U.S. border crossings by allowing vehicles not subject to safety regulations to pass without inspection. The Act served to amend the terms "motor carriers" and "private motor carriers" to include only "commercial motor vehicles." Commercial vehicles are defined by 49 U.S.C. § 31132(1) as:

(1) "commercial motor vehicle" means a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle - -

(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater.

(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;

(C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation, or

(D) is used in transporting material found by the Secretary of Transportation to be hazardous . . .

The change in definition of the terms "motor carriers" and "private motor carriers," was widely accepted to restrict the Transportation Secretary's power to regulate qualifications and hours of drivers employed by motor carriers and private motor carriers to carriers operating vehicles with a weight greater than 10,001 pounds. Drivers of vehicles weighing less than 10,000 pounds ("smaller vehicles"), were no longer under the authority of the Department of Transportation and therefore no longer exempt from overtime compensation. See 29 U.S.C.A. 213(b)(1). However, and importantly, after passage of SAFETEA-LU, it was widely regarded that drivers who drove <u>both</u> larger and smaller vehicles were still subject to the Transportation Secretary's regulations, and therefore were not entitled to overtime compensation under the FLSA.

23. On June 7, 2008, the SAFETEA-LU Technical Corrections Act of 2008 became effective. The Act amended SAFETEA-LU, among other things, by restoring the definition of the terms "motor carrier" and "private motor carrier" to their pre-2005 meanings. The effect of the Corrections Act was to reinstate the jurisdiction of the Secretary of Transportation over drivers of both larger and smaller vehicles. See P.L. 110-244 § 305(c).

However, Section 306 of the Corrections Act expressly amended the FLSA by instructing that overtime compensation <u>would be available to "covered employee[s]" notwithstanding the provisions of the Motor Carrier Exemption</u>. See P.L. 110-244 § 306(A) (emphasis added).

The Technical Corrections Act defined a "covered employee" as someone:

(1)   who is employed by a motor carrier or motor private carrier . . .

(2)   whose work, in whole or in part, is defined - -

(A)   as that of a driver, driver's helper, loader, or mechanic; and

(B)   as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles - -

(I)   designed or used to transport more than 8 passengers (including the driver) for compensation;

(ii)   designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or

(iii)   used in transporting material found by the Secretary of Transportation to be hazardous . . .

24.   In this instant matter, Plaintiff was a covered employee entitled to overtime compensation by virtue of the Technical Corrections Act of 2008. The same would be the case for other similarly situated employees employed by Defendant since the Corrections Act took effect.

25.   According to the Department of Labor, Plaintiff was a covered employee for any week where she worked on smaller vehicles, even if she worked on larger vehicles during that same period. See U.S. Dept. of Labor Wage & Hour Division Fact Sheet #19, issued Nov. 2009, and Dept. of Labor Field Assistance Bulletin No. 2010-2 (explaining that employee drivers were entitled to overtime compensation provided that they worked for at least part of the week on vehicles weighing less than 10,000 pounds). Again, the same would be the case for other

similarly situated employees employed by Defendant since the Technical Corrections Act took effect

26. During each work week of her employment, Plaintiff was assigned to drive vehicles weighing less than 10,000 pounds and with seating capacities that did not exceed more than 8 passengers. Those "smaller vehicles" were assigned specific vanity tags, to include but not limited to "CFH 64," "CFH 43," and "CFH 23." The acronym "CFH" stands for Chariots for Hire.

### **SPECIFIC FACTS RELATED TO DEFENDANTS' MISCLASSIFICATION AND DENIAL OF BENEFITS TO PLAINTIFF AND OTHER SIMILARLY SITUATED EMPLOYEES**

27. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA and as the term is interpreted by the Internal Revenue Service. Specifically, Plaintiff was hired in June 2010 to serve as a driver of the limousines owned by Defendants.

28. At all relevant times, Defendants directed when, where and how Plaintiff performed her duties. Defendants were responsible for Plaintiff's supervision. Defendants hoped to engage in a long and continuous relationship with Plaintiff. Defendants dictated Plaintiff's hours of employment and what days she worked. Defendants employed Plaintiff on a full-time basis. Defendants required Plaintiff to work at their jobsite. Defendants assigned Plaintiff to, and required her to report to certain supervisors. Defendants devised different schemes to deduct monies from Plaintiff's salary for workplace infractions or damage to Defendants' assets. Defendants maintained the right to unilaterally terminate Plaintiff without liability. Defendants maintained the right to discipline and counseled Plaintiff as each saw fit.

These factors and indicia of control applied not only to Plaintiff, but also to a wide class of similarly situated employees/drivers.

29. During her employment, Plaintiff was misclassified as a "casual worker." Upon information and belief, Defendant also intentionally and improperly misclassified a wide class of similarly situated employees as "casual workers."

30. Routine and required payroll taxes were (e.g., FICA, Social Security), were not taken out of Plaintiff's compensation due to Defendants' improper misclassification practices. The evidence will show that Defendants provided Plaintiff with a "1099" instead of a W-2 after terminating her employment. Upon information and belief, Defendants misclassified Plaintiff and a wide class of similarly situated employees for the purpose of avoiding the payment of required payroll taxes.

31. During her employment, Plaintiff (who was assigned to work seven (7) days a week), was not afforded any benefits, such as health care, dental, vision, vacation or sick leave. Upon information and belief, Defendants excluded Plaintiff from such benefits coverage by improperly misclassifying her (and other similarly situated employees), as "casual workers." At all relevant times, Defendants did in fact sponsor a welfare benefits plan for certain employees, to include other drivers.

**COUNT I**
**(THE FAIR LABOR STANDARDS ACT)**

32. Plaintiff hereby incorporates paragraphs 1 – 31 as though fully set forth herein.

33. From the onset of Plaintiff's employment to the date of her termination, Defendants routinely required Plaintiff to work in excess of 40 hours per week.

34. Under the FLSA, Plaintiff was entitled to receive overtime compensation for hours worked in excess of 40 hours per week and federal minimum wage.

35. Pursuant to Defendants' policy of only paying employees for hours spent actually driving a customer, and not paying for waiting time, time spent at the main worksite pending an assignment, performing administrative tasks, or time spent commuting to or from the pickup of a customer, Plaintiff was not compensated for her work in excess of 40 hours in a work week and on various occasions, was not paid minimum wage in violation of the FLSA.  Additionally, Defendants did not count all of Plaintiff's hours worked, by not reflecting all of the assignments that she performed in her payroll records.  The correct overtime compensation should have been payment at the rate of time and one half for all hours worked over 40 hours per week.  Defendants' scheme failed to meet the minimal requirements of the FLSA and its controlling regulations, thereby violating the statute.

36. Defendants' conduct was "willful" within the meaning of 29 U.S.C. § 626(b).

## COUNT II
## (D.C. WAGE PAYMENT LAW)

37. Plaintiff hereby incorporates paragraphs 1 – 36 as though fully set forth herein.

38. From the onset of Plaintiff's employment to the date of her termination, Defendants routinely required Plaintiff to work in excess of 40 hours per week within the District of Columbia.

39. Under D.C. Wage Payment law, Plaintiff was entitled to receive overtime compensation for hours worked in excess of 40 hours per week and D.C. minimum wage standards.

40. Pursuant to Defendants' policy of only paying employees for hours spent actually driving a customer, and not paying for waiting time, time spent at the main worksite pending an assignment, performing administrative tasks, or time spent commuting to or from the pickup of a customer, Plaintiff was not compensated for her work in excess of 40 hours in a work week and

on various occasions, was not paid minimum wage in violation of D.C. Wage Payment law. Additionally, Defendants did not count all of Plaintiff's hours worked, by not reflecting all of the assignments that she performed in her payroll records.  The correct overtime compensation should have been payment at the rate of time and one half for all hours worked over 40 hours per week.  Defendants' scheme failed to meet the minimal requirements of D.C. Wage Payment law, thereby violating the statute.

## COUNT III
### (FRUADULENT MISREPRESENTATION)

41. Plaintiff hereby incorporates paragraphs 1 – 40 as though fully set forth herein.

42. Defendants, through their agents, falsely represented to Plaintiff that she would be paid at a rate of $20/hr for all of her hours worked.

43. Defendant's false representation was made in reference to a material fact with knowledge of its falsity and with the intent to deceive Plaintiff.

44. Plaintiff relied upon Defendant's false representations and acted upon those false representations in accepting her position with Defendants.

## COUNT IV
### (BREACH OF IMPLIED CONTRACT)

45. Plaintiff hereby incorporates paragraphs 1 – 44 as though fully set forth herein.

46. Defendants, through their agents, offered Plaintiff a position with a set salary of $20/hr for all of her hours worked.

47. Plaintiff accepted Defendants' offer and gave valuable consideration in the form of her labor.

48. Defendants' breached the terms of their offer to Plaintiff.

## **REMEDIES**

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment against Defendants granting her the following relief:

(a) Defendants' immediate and expeditious disclosure of documents (to include, but not limited to payroll records, booking confirmations and reservation sheets related to Plaintiff and for all similarly situated employees from June 7, 2008 to present date.

(b) Overtime compensation beginning on the date which is three years before the filing of Plaintiff's suit, because Defendants' violations were willful;

(c) Liquidated damages of an equal amount under 29 U.S.C. § 216(b);

(d) Prejudgment and post judgment interest;

(e) Reasonable attorneys' fees and costs under the FLSA, 29 U.S.C. § 216(b)

(f) Reasonable damages for breach of contract;

(g) Appropriate damages under the District of Columbia wage laws; and

(h) Such other and further equitable relief as this Court orders.

WHEREFORE, Plaintiff, Charita Douglas, respectfully requests that this action proceed in this Court.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues of fact and damages arising hereunder pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

                                            /s/
Neil E. Duke (D.C. Bar No. 471942)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
100 Light Street
Baltimore, MD  21202-1643
(410) 685-1120
(410) 547-0699 – Fax
Attorney for Plaintiff

Dated: March 19, 2012