**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**CHARITA DOUGLAS,**

     **Plaintiff,**

        **v.**                            **Civil Action No.  12-429 (JEB)**

**CHARIOTS FOR HIRE,** *et al.*,

     **Defendants.**

<u>**MEMORANDUM OPINION**</u>

On March 19, 2012, Plaintiff Charita Douglas, a limousine driver, filed this suit against her former employer, Chariots for Hire, and its management, seeking unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 207.  The Court subsequently granted Plaintiff's Motion for Leave to Amend her Complaint to pursue a "collective action" on behalf of similarly situated employees at the company.  Defendants now move to dismiss or to transfer venue to the Eastern District of Virginia, arguing that nearly all of the alleged events here arose in Virginia, not the District of Columbia.  Finding that venue is proper in this District and that the interests of justice do not weigh in favor of transfer, the Court will deny Defendants' Motion.

**I.**     **Background**

According to the Amended Complaint, which must for now be presumed true, Chariots hired Douglas as a driver in June 2010.  <u>See</u> Am. Compl., ¶ 17.  She drove both large and small vehicles for the company, which operates a luxury-limousine transportation service in the greater Washington area.  <u>Id.</u>, ¶¶ 16, 17-19, 28.  Douglas alleges that Defendants took a number of steps to avoid paying her and similarly situated employees appropriate minimum and overtime wages as required by the FLSA.  <u>Id.</u>, ¶¶ 10-16, 28-31, 36-40, 44.  According to Douglas, these measures

included misclassifying her and her peers as "casual workers" or "independent contractors" for tax and employee-benefits purposes. Id., ¶¶ 38-40. In addition, Plaintiff alleges that although she was required to be present on Defendants' premises from 9:00 a.m. until the conclusion of her last drive of the day, seven days per week, she was only compensated for time spent actually driving passengers. Id., ¶¶ 18-21. She claims this deprived her of overtime wages to which she would otherwise have been entitled for working more than 40 hours per week. Id., ¶ 23. She asserts that this also had the effect of denying her minimum wages on several occasions. Id., ¶ 24.

Douglas originally filed this lawsuit on March 19, 2012, and subsequently sought leave to amend her complaint to proceed as a "collective action" under § 216(b) of the FLSA, which request this Court granted. See Order of September 11, 2012 (ECF No. 36). Additionally, Plaintiff filed a Motion for Conditional Class Certification, which the Court also granted. See Order of October 31, 2012 (ECF No. 42). Defendants now move to dismiss the Amended Complaint for improper venue or, in the alternative, to transfer the case to the Eastern District of Virginia.

## II.     Legal Standard

### A.     12(b)(3) and § 1406 Dismissal for Improper Venue

When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see also Fed. R. Civ. P. 12(b)(3) (may assert improper venue via motion). In considering a Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's

favor." Pendleton v. Mukasey, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing Darby v. U.S.

Dep't of Energy, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002)).  The Court need not, however,

accept the plaintiff's legal conclusions as true, Darby, 231 F. Supp. 2d at 277, and may consider

material outside of the pleadings.  Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002)

(citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)).  "Because it is the plaintiff's obligation to

institute the action in a permissible forum, the plaintiff usually bears the burden of establishing

that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); 15 Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 3826, at 258 (2d ed. 1986 & Supp.

2006) ("[W]hen an objection has been raised, the burden is on the plaintiff to establish that the

district he or she has chosen is a proper venue.").  To prevail on a motion to dismiss for improper

venue, however, "the defendant must present facts that will defeat the plaintiff's assertion of

venue." Khalil v. L-3 Commc'ns Titan Grp., 656 F. Supp. 2d 134, 135 (D.D.C. 2009).  Unless

there are "pertinent factual disputes to resolve, a challenge to venue presents a pure question of

law." Williams v. GEICO Corp., No. 10-1420, 2011 WL 2441306, at *2 (D.D.C. June 20,

2011).

> B.      § 1404 Transfer of Venue

As an alternative to dismissal, Defendants seek to transfer this action to the United States

District Court for the Eastern District of Virginia in the interests of justice pursuant to 28 U.S.C.

§ 1404.  Even where a plaintiff has brought its case in a proper venue, a district court may, "for

the convenience of parties and witnesses, in the interests of justice . . . transfer [it] . . . to any

other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a).  District

courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized,

case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487

U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

**III.    Analysis**

      A.      § 1406 Dismissal

     Defendants first contend that Plaintiff's Amended Complaint should be dismissed under

28 U.S.C. § 1406(a) because venue in the District of Columbia is improper.  See Mot. at 2-7.

This is so, they maintain, because "no substantial part of the events that allegedly gave rise to

Plaintiff's claims arose in the District of Columbia.  On the contrary, all or nearly all of the

events alleged arose in Virginia."  Id. at 6.  Plaintiff counters that venue is proper here since "a

substantial part of the events giving rise to [her] claims occurred in [the District of Columbia],

and Defendant corporation is a resident of the District of Columbia."  Opp. at 4-5.  The Court

agrees.

     For the venue purposes of this case, a civil action may be brought in "a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C.

§ 1391(b)(2).  As a court in this District has noted,

> Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in
> the district where the most substantial portion of the relevant
> events occurred, nor does it require a plaintiff to establish that
> every event that supports an element of a claim occurred in the
> district where venue is sought.  To the contrary, a plaintiff need
> only show that "a substantial part of the events or omissions giving
> rise to the claim occurred" in that district.  28 U.S.C. § 1391(b)(2)
> (emphasis supplied).  Indeed, the transactional-venue provision of
> section 1391(b)(2) clearly allows that, in some cases, a plaintiff
> will have a choice among multiple districts where a substantial
> portion of the underlying events occurred.  See City of New York
> v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005)
> ("Venue may be proper even if a greater part of the events giving
> rise to a claim happened in another forum.");  Dooley v. United
> Techs. Corp., 786 F. Supp. 65, 80 (D.D.C. 1992) ("[I]t appears that
> [section 1391(b)(2)] is intended to place venue within the District

of Columbia, even where the case also might be brought in another
forum."); Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th
Cir. 1994) ("[W]e ask whether the district the plaintiff chose had a
substantial connection to the claim, whether or not other forums
had greater contacts.").

Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006).  The court concluded that "even if a

substantial part of the events in this case took place in Maryland, that does not preclude plaintiff

from filing suit in the District of Columbia if a substantial part of the events took place here, as

well."  Id.; see also Radtke v. Caschetta, No. 06-2031, 2007 WL 2071700, at *5 (D.D.C. Jul. 17,

2007).

Defendants do not dispute that some of the alleged events in this case took place in the

District of Columbia; instead, they simply contend that a more substantial portion – and, indeed,

the most significant events – occurred in Virginia.  See Mot. at 4-5.  Specifically, Defendants

point to the following Virginia-centric events:

- "All substantive decisions by the Company about the terms and conditions under
  which Plaintiff and other drivers were engaged, and the payments made to
  Plaintiff and other drivers in connection with those engagements, were made in
  Virginia," see id. at 4;

- "The computation and processing of payments to Plaintiff and other drivers by the
  Company in connection with their engagements for the Company occurred in
  Virginia," see id.;

- "Company vehicles that Plaintiff and other drivers used to perform their
  engagements for the Company were owned by M & C, were registered in
  Virginia and had Virginia tags," see id.; and

- Company vehicles "were stored in Virginia, and all regular maintenance on
  those vehicles was performed in Virginia," and drivers accordingly began and
  ended each of their engagements at the Company's facility in Virginia.

See id. (citing Declaration of Jeffrey T. Dausch, ¶¶ 5-9).

While Defendants stress the concentration of events in Virginia, they do acknowledge

that more than one-third of Plaintiff's trip hours were spent in the District.  See id. at 4-5

5

("Plaintiff spent approximately 254 hours in Virginia, approximately 172 trip hours in the

District of Columbia, and approximately 59 trip hours in Maryland.").  The substantial

percentage of driving hours that Plaintiff and her fellow drivers spent in the District of Columbia

makes this case readily distinguishable from Shay v. Sight & Sound Sys., Inc., 668 F. Supp. 2d

80 (D.D.C. 2009), a case upon which Defendants rely.  In Shay, a court in this District found that

there was no venue under § 1391(b)(2) where the plaintiffs' complaint was almost entirely

devoid of any allegations of work being done in the District of Columbia.  The court noted that

while "[f]our of the five plaintiffs [had] allege[d] that their job duties included installing stereo

and electronic equipment throughout the Washington, D.C., metropolitan areas, . . . they fail to

provide any specific facts to show that they performed work in the District of Columbia for

which they have gone uncompensated."  Id. at 84.  The plaintiffs' allegations there were further

undermined where the defendants presented

> facts showing that a very small proportion of the plaintiffs' work
> occurred [in the District of Columbia].  For example, the
> defendants show that Shay was assigned to work on only one
> project located in the District of Columbia.  The defendants also
> establish that Talbert and Perez each worked on only one project
> located in the District of Columbia out of the 100 and 50 projects
> respectively that they worked on during the course of their
> employment.  Findley and Coleman never worked in the District of
> Columbia.

Id. at 85 (internal citations omitted).  Even were its conclusion binding, the facts in Shay thus

diverge widely from those here.

       In addition to the substantial percentage of time Plaintiff personally spent driving

customers in the District, she contends that "a substantial amount of [Defendants'] business was

focused on operating within the District of Columbia."  Opp. at 8.  Specifically, Plaintiff points

to admissions by Defendants that

- they are "engaged in the business of providing chauffeured transportation services within the District of Columbia," see id. (quoting Defs.' Answer, ¶ 2) (emphasis omitted);

- "certain of the driving engagements in which Plaintiff participated took place in part in the District of Columbia," see id. (quoting Defs.' Response to Request for Admission No. 58); and

- they perform transportation services within the District.

See id. (quoting Deposition of Courtney West, Defendants' Rule 30(b)(6) corporate designee). Plaintiff further notes that Defendant "M & C Enterprise, Inc., d/b/a/ Chariots for Hire, is a corporate resident of the District of Columbia as it is both registered in, and maintains a resident agent assigned within the District." Opp. at 9.

In addition to these contacts with the District of Columbia, Plaintiff also points to the following statements on the company's website proclaiming its unique knowledge of Washington and the extensive services it offers in the area:

- ". . . no one knows DC like Chariots.  With a staff of in-house tour guides and uniquely trained and certified drivers we can provide you and your guests with a personal expedition through our Nation's Capitol.  . . . [Y]our DC Chariot awaits!" see Opp. at 5-6 (citing http://www.chariotsforhire.com/dc_tours.html);

- "[o]ver the past decade, Chariots for Hire became a recognized leader in transportation and an icon for those interested in Washington DC's nightlife and tourism," id. at 6; and

- "Chariots For Hire possesses unique familiarity with the pace of Washington and continues to expand its services and vehicles to suit the expectations of its guests."

Id.

Considering Plaintiff's driving time in the District along with Defendants' admissions and website, the Court finds that a substantial part of the events in this case took place here, thus making this District a proper venue for the suit.  The Court, therefore, will deny Defendants' Motion under § 1406 and turn to their alternate argument in favor of transfer under § 1404(a).

B.    <u>Transfer Under § 1404</u>

Defendants next contend that even if venue in the District of Columbia was proper, the Court should exercise its discretion to transfer this case under 28 U.S.C. § 1404(a).  <u>See</u> Mot. at 7-13.  To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district.  <u>Treppel v. Reason</u>, 793 F. Supp. 2d 429, 435 (D.D.C. 2011).  The movant must also show that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ."  <u>Sierra Club v. Flowers</u>, 276 F. Supp. 2d 62, 65 (D.D.C. 2003).  This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake.  <u>Stewart Org.</u>, 487 U.S. at 29.  The burden is on the moving party to establish that transfer is proper.  <u>Trout Unlimited v. U.S. Dep't of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

The parties here agree that the threshold requirement of § 1404(a) is met, as the case could have originally been brought in the Eastern District of Virginia.  <u>See</u> Mot. at 7; Opp. at 13.  That is correct since all Defendants are Virginia residents.  <u>See</u> 28 U.S.C. § 1391(b)(1) (venue is proper in a judicial district where any defendant resides, if all defendants are residents of same state).  Having cleared this preliminary hurdle, the Court will focus its analysis on the private- and public-interest factors that underlie the case-specific, discretionary transfer inquiry under § 1404(a).  Those private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.  <u>See</u> <u>Trout Unlimited</u>, 944 F. Supp. at 16.  The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home.

See id.  In this case, neither the private- nor public-interest factors tip the scales decisively in favor of either venue.  Given the current posture of the case and the familiarity this Court now has with the parties and issues, the Court ultimately finds that the interests of justice militate in favor of maintaining the suit in this District.

     *1.*    *Private-Interest Factors*

     a.  Plaintiff's Choice of Forum

A plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request." Thayer/Patricof Educ. Funding, LLC v. Pryor Res., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (internal quotation marks omitted).  A plaintiff's considerable freedom to bring a lawsuit in an advantageous forum should not be compromised by a transfer that "merely shift[s] the inconvenience from one party to the other."  15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3848 (3d ed. 1998) (citation omitted).

The deference owed a plaintiff's chosen forum, however, is lessened when the forum has "no meaningful ties to the controversy," and lessened further still when the forum to which transfer is sought has "substantial ties" to both the plaintiff and "the subject matter of the lawsuit." Trout Unlimited, 944 F. Supp. at 17 (citations omitted).  While Virginia has meaningful ties, it cannot be said that the District of Columbia has no ties to the controversy, as a substantial portion of the relevant events connected to the lawsuit occurred here.  See Section III.A, *supra*.  The Court, therefore, must follow the ordinary rule and accord Plaintiff's choice of forum some deference in the transfer inquiry.

     b.  Defendant's Choice of Forum

While a defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference.  See Mahoney v. Eli Lilly & Co., 545 F. Supp.

2d 123, 127 (D.D.C. 2008).  And here, where Defendants move to transfer over Plaintiff's

opposition, they must establish that the added convenience and justice of litigating in their

chosen forum overcomes the deference ordinarily given to Plaintiff's choice.  See In re Vitamins

Antitrust Litig., 263 F. Supp. 2d 67, 69 (D.D.C. 2003).  To the extent this factor carries any

weight, it weighs in favor of transfer.

c.  Whether Claim Arose Elsewhere

In considering a motion to transfer, the Court also examines whether there is a nexus

between the underlying transactions giving rise to the claim and the forum selected.  See, e.g.,

Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 158 (D.D.C. 2008).  When the material

events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum,

transfer is favored.  Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior, 669 F. Supp. 2d 88, 95

(D.D.C. 2009).  Where claims arise from actions in several fora, "this factor does not weigh in

favor or against transfer."  Bederson v. U.S., 756 F. Supp. 2d 38, 48 (D.D.C. 2010).

In Section III.A, *supra*, the Court found that Plaintiff's engagements in the District of

Columbia and Defendants' regular performance of transportation services here constituted a

"substantial event" for purposes of 28 U.S.C. § 1391(b)(2).  This determination, however, does

not mean that the District of Columbia is where Plaintiff's claims "arose" for purposes of 28

U.S.C. § 1404(a).  See Treppel, 793 F. Supp. 2d at 436.  "Courts in this district have held that

claims 'arise' under 28 U.S.C. § 1404(a) in the location where the corporate decisions underlying

those claims were made, or where most of the significant events giving rise to the claims

occurred . . . ."  Id. at 436-37 (internal citation omitted).

Defendants contend that under this definition, the claims at issue in this case arose in the

Eastern District of Virginia.  See Mot. at 9.  Specifically, they argue:

10

> All of Plaintiff's payments, and payments to all other drivers, were
> computed and processed in Virginia.  The Company vehicles that
> Plaintiff and other drivers drove to perform their Company
> engagements were registered in Virginia, stored in Virginia, and
> each of the days in which they participated in driving engagements
> for the Company they picked up and dropped off those vehicles at
> the Company's facility in Virginia.

Id. (internal citations omitted).  Because the Court agrees that the corporate decisions and most

of the significant events giving rise to the claims here appear to have occurred in Virginia, it

finds that this factor weighs in favor of transfer.

    d. Convenience of Parties, Convenience of Witnesses & Ease of Access
     to Sources of Proof

The final three factors "do not weigh heavily in favor of either venue, given the close

proximity of the District of Columbia and the Eastern District of Virginia."  Treppel, 793 F.

Supp. 2d at 437 (citing Lagor v. Eli Lilly & Co., No. 06–1967, 2007 WL 1748888, at *4 (D.D.C.

June 18, 2007) (finding close proximity of two potential venues minimized any potential

inconvenience).  Additionally, while the bulk of Defendants' records may be in Virginia,

"technological advances have significantly reduced the weight of the ease-of-access-to-proof

factor."  Nat'l R.R. Passenger Corp. v. R & R Visual, Inc., No. 05-822, 2007 WL 2071652, at *6

(D.D.C. July 19, 2007); see also Thayer, 196 F. Supp. 2d at 36; Air Line Pilots Ass'n v. Eastern

Air Lines, 672 F. Supp. 525, 527 (D.D.C. 1987).

Finding that the private-interest factors do not tilt strongly in favor of either venue, the

Court now turns to the public-interest ones.

    2. *Public-Interest Factors*

The public-interest factors, similarly, offer no clear answer as to the preferable venue.

a.  Transferee's Familiarity with the Governing Laws

Both parties agree that the core of the case – Plaintiff's claim under the FLSA – could be handled competently by a federal court in either district.  See, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor"). Defendants contend, however, that the case should be transferred to the Eastern District of Virginia because that court would be more familiar with Virginia law, which would "likely" apply to Plaintiff's common-law claims for breach of implied contract and fraudulent misrepresentation.  See Mot. at 10-11.  Plaintiff counters that District of Columbia law, rather than Virginia law, will apply to these claims, thus counseling in favor of maintaining this matter here.  See Opp. at 18-19.

While this Court has not performed a choice-of-law analysis for Plaintiff's common-law claims, even if Defendants were correct that Virginia law governs, where the heart of the case involves violations of federal law, this factor is less significant.  See Thayer, 196 F. Supp. 2d at 36 (finding this factor did not strongly favor transfer to Kansas where complaint included numerous allegations of violations of federal securities laws); but see Treppel, 793 F. Supp. 2d at 439 (noting that "courts in this district often transfer cases to the Eastern District of Virginia where the cases involve claims arising under Virginia law, despite this Court's ability to apply Virginia law").

b.  Relative Congestion of the Courts

A comparison of the relative docket congestion in the District of Columbia and the Eastern District of Virginia is largely neutral with respect to transfer.  While "congestion alone is not sufficient reason to transfer," this Circuit has held that "relative docket congestion and

potential speed of resolution is an appropriate factor to be considered" by district courts in the

motion-to-transfer analysis.  See Starnes v. McGuire, 512 F.2d 918, 932 (D.C. Cir. 1974).  As

Defendants note, the median time interval from filing to disposition of civil cases is somewhat

shorter in the Eastern District of Virginia.  See Mot. at 12-13 (citing U.S. District Courts –

Median Time Intervals, available at

http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/C05Sep11.pdf).

Plaintiff does not appear to dispute the statistical disparities cited by Defendants, instead electing

to focus on the fact that to date, the case has proceeded without "any hint of inefficiency."  Opp.

at 20.

　　　　While courts in this District have granted motions to transfer based, in part, on

differences in docket congestion between two districts, see, e.g., Treppel, 793 F. Supp. 2d at 439

(finding transfer warranted based on median-time-interval differences between District of

Columbia and Eastern District of Virginia); Parkridge 6, LLC v. U.S. Dep't of Trans., 772 F.

Supp. 2d 5, 8-9 (D.D.C. 2009) (same), the statistical differences here do not weigh strongly in

favor of transfer.  See U.S. v. H & R Block, Inc., 789 F. Supp. 2d 74, 84-85 (D.D.C. 2011)

(treating relative congestion of dockets as neutral factor in transfer analysis, noting that

"statistics provide, at best, only a rough measure of the relative congestion of the dockets in the

two districts.  They do not, for example, reflect the differences in the caseloads carried by

different individual judges in each district.  Any disparities between the lengths of time from

filing to trial may also reflect differences other than congestion, such as differences in the types

of cases that are likely to be tried in each district and the level of discovery and pre-trial motion

practice required in those cases.").

Since the filing of this action in March 2012, this case has proceeded in a timely manner. A Scheduling Order was issued on May 29 following the Initial Scheduling Conference, setting dates for initial disclosures, motions for joinder or to amend the pleadings, and deadlines for discovery.  See ECF No. 17.  This Court has timely ruled on several subsequent motions, presided over discovery disputes that have arisen, and overseen the parties' efforts in developing a Notice of Collective Action.  See August 20, 2012 & January 2, January 8, January 10, & January 17, 2013, Minute Orders.  Additionally, while the pending Motion was filed on September 25, 2012, any delays in its resolution were due to a consensual stay in the proceedings while the case was referred for mediation.  See December 21, 2012, Minute Order.  Finally, at least for now, this particular Court's calendar is not filled with lengthy scheduled trials that might interfere with its ability to attend to this matter.  This factor thus does not favor either side.

       c.  Local Interest in Controversies

Defendants maintain that the Eastern District of Virginia, "where Defendants reside and where the Company operates its business," has a strong local interest in resolving Plaintiff's claims.  See Mot. at 13.  Plaintiff responds that this District has a "high level of interest in determining this controversy" because Defendants "actively operate, advertise, and send their employees to the District."  See Opp. at 21, 20.  While Defendants are correct that the Eastern District of Virginia has a strong interest in having Plaintiff's claims resolved there, Defendants' substantial business engagements in the District of Columbia largely neutralize this factor.

When viewed collectively, both sets of factors do not strongly favor litigation in either venue.  While several may tip slightly in favor of transfer to Virginia, they do not do so decisively, and the burden is squarely on Defendants to demonstrate that the balance of factors

favors transfer.  See Thayer, 196 F. Supp. 2d at 31; Armco Steel Co., L.P. v. CSX Corp., 790 F.

Supp. 311, 323 (D.D.C. 1991).

       *3.     Interests of Justice*

      Given this essential equipoise or, at most, a gentle inclination of the scale toward transfer,

the Court might be at an impasse.  That is not the case here because a critical factor has yet to be

discussed: the Court's current involvement in the case.  Where a Court has gained knowledge

and familiarity with the facts, the interests of justice and concerns of efficiency militate in favor

of retaining the suit.  See SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1156 (D.C. Cir. 1978) (a

court's "familiarity with the allegations, characters, lawyers, and previous history of litigation of

th[e] particular case" weighed in favor of denying party's request for transfer) (citing Wyndham

Assoc. v. Bintliff, 398 F.2d 614, 619-20 (2d Cir. 1968)); FTC v. Cephalon, Inc., 551 F. Supp. 2d

21, 31 (D.D.C. 2008) (finding that "th[e] case may be resolved more expeditiously" where "[the]

court is already familiar with the facts and legal issues presented"); Navajo Nation v. Peabody

Holding Co., Inc., 209 F. Supp. 2d 269, 280 (D.D.C. 2002) (denying motion to transfer in part

because case had been pending for significant period, "during which time the Court has

considered and resolved a variety of potentially dispositive motions and discovery disputes,"

thus making the "interests of judicial efficiency" against transfer).

      As discussed in Section III.B.2.b, *supra*, the Court has ruled on a number of substantive

motions, dealt with the lawyers on multiple occasions, and helped guide the discovery and class

procedures.  This familiarity would be squandered by a transfer now.  As a result, the Court's

prior involvement means that the interests of justice would be clearly served by keeping the case

here.  This determination carries sufficient weight to offset the other factors that might lean

toward transfer.

**IV.   Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order denying Defendants' Motion.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  January 24, 2013