IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARITA DOUGLAS, *et. al*. ) | |
| ) | |
| Plaintiffs, ) | Civil Case No. 1:12-CV-429 |
| ) | |
| v. ) | FLSA Collective Class Action |
| ) | |
| CHARIOTS FOR HIRE, *et. al*. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

The parties in the above-captioned action respectfully move this Court to approve the proposed Settlement reached by the parties and memorialized in the individual Agreements to Settle Collective Action Lawsuit and Release, attached as **Exhibits A-I**, to enter judgment, and to dismiss Plaintiffs' claims with prejudice. Unredacted copies of the documents in Exhibit A have been submitted to the court for review *in camera*. The civil complaint, filed and then subsequently amended, asserted wage-and-hour claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, on behalf of individuals who performed services for Defendant Chariots for Hire ("Chariots").

The parties respectfully submit that the proposed Settlement is fair and reasonable and that it satisfies the criteria for approval set forth under the FLSA, 29 U.S.C. § 216 (b). The Settlement was achieved during lengthy negotiations among the parties and conducted by experienced counsel. If approved by the Court, the Settlement will make payments available to the Named Plaintiff and all other Opt-in Plaintiffs who elected to participate in the Settlement by signing consent forms and releases.

The Settlement achieves the objectives of the parties. For Plaintiffs, the Settlement ensures that each will be paid promptly. For Defendants, the Settlement ensures finality while making the Settlement as inclusive as possible. The following sections explain the nature of the civil action, the extensive negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

## **STANDARD OF REVIEW**

The long-standing proposition has been that FLSA settlement agreements, such as the agreements attached as Exhibit A, required judicial approval. *See* 29 U.S.C. §216(b)-(c); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010) (alterations and internal quotation marks omitted).

However, the general principal of judicial approval has been called into question by some recent decisions. *See Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012) (private settlement of FLSA claims may be enforceable without court or United States Department of Labor approval when there exists a "bona fide dispute to liability" and the plaintiff-employees are represented by legal counsel); *Picemi v. Bilingual SEIT & Preschool Inc.*, No. 12 Civ. 4938 (BMC) (E.D.N.Y. Feb. 22, 2013) (with the court noting his belief that, "I believe the parties can voluntarily dismiss an FLSA case without judicial approval – if the defendant is willing to undertake the risk of doing so").

Notwithstanding the potential split in authorities, the parties in this instant matter

mutually desire this Court's approval. In reviewing this proposed FLSA collective action Settlement, this Court will undoubtedly consider the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Burkholder*, 750 F. Supp. 2d at 995; *see also Lynn's Food Stores*, 679 F.2d at 1353-54 (the court should consider four factors: (1) whether the settlement was achieved in an adversarial context; (2) whether the plaintiffs were represented by attorneys who can protect their rights; (3) whether the settlement reflects a reasonable compromise over issues that are actually in dispute; and (4) whether the settlement is fair). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Burkholder*, 750 F. Supp. 2d at 995 (alterations and internal quotation marks omitted). Upon consideration of these factors, the parties respectfully submit that approval of this Settlement Agreement is justified.

## **THE LITIGATION**

1.  On or about March 19, 2012, Plaintiff Charita Douglas ("Named Plaintiff") brought this Action against Defendants seeking to recover allegedly unpaid overtime wages on behalf of herself and other past and present drivers for Chariots who had been classified as independent contractors. Named Plaintiff contends that she and other similarly situated current

and former drivers engaged by Chariots as independent contractors are entitled to recover unpaid overtime wages as a result of Defendants' alleged failure to compensate them for hours worked in excess of forty (40) in any given workweek. Specifically, Named Plaintiff alleges that Chariots had a company-wide policy and practice that allegedly misclassified drivers as independent contractors, rather than employees, and considered them to be exempt from the overtime requirements of the Fair Labor Standards Act of 1938, as amended ("FLSA"). Named Plaintiff contends that Defendants' policies and practices violate the FLSA and unlawfully denied Named Plaintiff and similarly situated drivers payment for overtime compensation.

2. Defendants answered the Complaint and denied the allegations that Defendants engaged in these practices or that Defendants are liable to Named Plaintiff or Opt-in Plaintiff under the FLSA or any other law.

3. On or about July 30, 2012, Named Plaintiff filed a Motion for Leave to File Amended Complaint. The Court granted said Motion on or about September 11, 2012, and the Amended Complaint in this Action was deemed filed the same day.

4. Defendants answered the Amended Complaint and denied the allegations that Defendants engaged in these practices or that Defendants are liable to Named Plaintiff or Opt-in Plaintiffs under the FLSA or any other law.

5. On or about October 31, 2012, the Court conditionally certified this Action as a collective action under the FLSA, 29 U.S.C. § 216(b) ("Order of Conditional Certification").

6. Defendants continue to deny Plaintiffs' allegations and continue to deny that this case is appropriate for collective action treatment. Pursuant to the Order of Conditional Certification, notice was sent to the following group of individuals defined as similarly situated to Named Plaintiff:

4

>Former and current employees of Chariots for Hire, Inc. who were classified as either "independent contractors" or "casual workers" from March 2009 to present.

7. On or about March 29, 2013, Named Plaintiff and thirteen (13) other individuals joined the lawsuit and submitted Consent to Sue Forms. The thirteen (13) individuals, other than Named Plaintiff, became Opt-in Plaintiffs. In submitting their Consent to Sue Forms, Opt-in Plaintiffs designated Plaintiff's Counsel to be their attorneys representing them in the Action and agreed to be bound by any judgment of the Court. They designated Named Plaintiff as their agent to make decisions on their behalf concerning the Action and their rights under the FLSA. They agreed that decisions and agreements made and entered into by Named Plaintiff would be binding on them.

8. Over the past eighteen (18) months while this Action was pending, Named Plaintiff and Opt-In Plaintiffs diligently pursued an investigation of, and vigorously litigated, their claims against Defendants, and Defendants vigorously pursued any and all applicable defenses. The parties engaged in both informal and formal discovery, which included propounding multiple sets of written discovery, responding to multiple sets of written discovery, interviewing witnesses, and producing thousands of documents. Defendants' Counsel took the deposition of Named Plaintiff, and Plaintiffs' Counsel took five (5) depositions.

9. The parties participated in a settlement conference with the Honorable U.S. Magistrate Judge Alan Kay of the U.S. District Court for the District of Columbia, on or about December 12, 2012. The settlement conference was not successful. The parties continued to engage in settlement discussions after the settlement conference and while discovery in this Action was ongoing.

10. Between July and October 2013, the parties came to an agreement in principle to settle the claims in this Action.

11. After diligent and extensive efforts, five (5) Opt-In Plaintiffs have not responded to correspondence sent by Plaintiff's counsel regarding settlement and cannot otherwise be reached. Plaintiff's counsel's has contemporaneously filed a Motion to Withdraw as Counsel.

12. Eight (8) Opt-In Plaintiffs remain parties to this Action. These remaining Opt-In Plaintiffs ("Settling Opt-In Plaintiffs") have agreed to settle their claims.

## THE SETTLEMENT TERMS

The parties have agreed to settle Named Plaintiff and Settling Opt-in Plaintiffs' claims in their entirety. In exchange for a full release of the claims, Defendants will pay each Plaintiff the individual amounts listed in the agreements in Exhibits A-I (unredacted versions of which have been submitted to the Court for *in camera* review). The parties have determined that the individual settlement payments constitute a fair resolution of each Plaintiff's claims. These individual payments include payments to the Plaintiffs for their claims, fees for Plaintiffs' counsel, and costs incurred by Plaintiffs' counsel in litigating this case.

Named Plaintiff and all Settling Opt-in Plaintiffs have agreed to the terms of the Settlement and have agreed to be bound by the Settlement.

## THE PROPRIETY OF APPROVAL

The Settlement here is appropriate and meets all of the requirements set under the applicable case law. Over the past year and a half, the parties have aggressively litigated this case, including exchanging multiple sets of written discovery, producing thousands of documents, and taking numerous depositions. Through the discovery exchanged, as well as the

parties' access to sources of relevant information, the parties have been able to evaluate the strengths and weaknesses of their claims and defenses.

The Settlement, reached following a full day of negotiation with an experienced mediator and further negotiations between the parties, reflects a compromise of the disputed issues and evaluations by both sides of the likelihood of success on the claims and defenses, as well as the costs and inconveniences of litigation. The parties each believe that they would have prevailed at trial. Although the parties have already conducted significant discovery, the discovery that would still need to be conducted is substantial. For instance, Defendants would seek to take the depositions of the Opt-in Plaintiffs. Additional litigation of the collective action would be complex, given individual claims and defenses of Named Plaintiff and the Opt-in Plaintiffs, and would require a great deal of time, effort and cost for the parties.

Named Plaintiff and the Settling Opt-in Plaintiffs have each agreed to the Settlement and have agreed to be bound by the terms therein. Additionally, the Settlement represents a significant recovery, as compared to the best possible recovery for Named Plaintiff and the Settling Opt-in Plaintiffs, particularly in light of the risks of litigation and the strengths and weaknesses of the parties' claims and defenses.

## CONCLUSION

For the reasons stated above, this Joint Motion for Approval of Settlement should be granted. The individual Settlement Agreements reflect a reasonable compromise of issues actually in dispute, the Settlement was reached in an adversarial context in which the parties were represented by competent and experienced counsel, and the totality of the proposed Settlement, including fees and costs for Plaintiffs' counsel, is fair and reasonable. Therefore, the

parties respectfully request the Court approve the Settlement and enter an Order dismissing

Named Plaintiff's and Settling Opt-In Plaintiffs' claims with prejudice

Dated:  December 23, 2013                                  Respectfully submitted,

*/s/ Neil E. Duke*                                                             */s/ Jeffrey W. Pagano*
Neil E. Duke (D.C. Bar No. 471942)                Jeffrey W. Pagano (D.C. Bar No. 464102)
Ober, Kaler, Grimes & Shriver                          Ira M. Saxe (Admitted *pro hac vice*)
A Professional Corporation                              CROWELL & MORING, LLP
100 Light Street                                                   590 Madison Avenue, 20th Floor
Baltimore, MD  21202                                        New York, NY  10022
(410) 685-1120 (office)                                      (212) 223-4000 (office)
(410) 547-0699 (fax)                                          (212) 223-4134 (fax)


ATTORNEY FOR PLAINTIFFS                    ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 23, 2013, I caused to be electronically filed a true and correct copy of the foregoing JOINT MOTION FOR APPROVAL OF SETTLEMENT utilizing the Court's CM/ECF system, which will automatically send notice of such filing to the following attorneys of record, and served this document as well by first class mail delivery to Defendants' attorneys of record listed below:

                Neil E. Duke, Esq.
                Ober, Kaler, Grimes & Shriver
                A Professional Corporation
                100 Light Street
                Baltimore, MD  21202-1643

Dated:  December 23, 2013
        New York, NY                                          */s/ Ira M. Saxe*
                                                                 Ira M. Saxe